**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TEGG CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 08-435 |
| | ) | Judge Nora Barry Fischer |
| BECKSTROM ELECTRIC CO., and | ) | |
| EXTENSIA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

## I.     INTRODUCTION

Before this Court are challenges by Defendants Beckstrom Electric Co. ("Beckstrom") and

Extensia Technologies ("Extensia") that certain causes of action asserted by Plaintiff TEGG

Corporation ("Plaintiff") in its Second Amended Complaint (Docket No. 56)[1] are preempted by the

Copyright Act of 1976, 17 U.S.C. § 101 et seq. ("the Copyright Act").  Underlying this action is the

sale of competing computer software by rival businesses.  Plaintiff has brought claims of copyright

infringement, tortious interference, and civil conspiracy against both Defendants, breach of contract

against Beckstrom, only; and, conversion against Extensia, only.  (Docket No. 56).  The following

motions are currently pending before the Court: (1) Defendant Beckstrom's motion to dismiss

Plaintiff's claims of tortious interference and civil conspiracy (Docket No. 60); and, (2) Defendant

Extensia's motion to dismiss Plaintiff's claims of conversion, tortious interference, and civil

---

[1]

    Plaintiff's Second Amended Complaint is indeed its third complaint in this action.

conspiracy (Docket No. 63).   Based on the following, Extensia's Motion to Dismiss [63] is

**GRANTED**, Plaintiff's civil conspiracy claim against Beckstrom is **DISMISSED** and Beckstrom's

Motion to Dismiss [60] is **GRANTED IN PART AND DENIED IN PART**.

## II.     FACTUAL BACKGROUND[2]

In response to this Court's Memorandum Opinion and Order issued July 1, 2008 (Docket No.

51), TEGG amended its previous complaint by adding detailed claims stating that all versions of the

TEGGTask software applications and databases have registered copyrights.  (Docket No.56 at ¶¶

18-27).   TEGG also added a more detailed description about how the EMX software is allegedly

similar to the TEGG software.  (*Id.* at ¶¶ 77-84).   For example, TEGG avers that its software is

structured into three modules: TEGGTask Central, which manages a franchisee's inspection and

maintenance programs, TEGGTask Remote, which is the data collection component and is tailored

for use by technicians while at customer sites, and TEGGTask View, which interfaces with the

computers of a franchisee's customers and allows the customers to access live inspection and

maintenance data.  (*Id.* at ¶ 78).   TEGG claims that the EMX software is also structured into three

modules with similar functionality.  (*Id.* at ¶ 80).

In addition, TEGG supplemented all of its claims with the following allegations:

49. On or about October 22, 2002, TEGG and Beckstrom entered into a TEGG
Franchise Agreement (the "Beckstrom Agreement").

...

---

[2]

For a more detailed recitation of the factual background, refer to Part II of the Court's previous Memorandum
Opinion *Tegg Corp. v. Beckstrom Elec. Co.*, Civ. A. No. 08-435, 2008 U.S. Dist. LEXIS 52184, at *2-5.  (W.D. Pa. July
1, 2008).

54. TEGG provided Beckstrom with non-transferable licenses to operate on Beckstrom's computers the TEGGTask 5 Software Application and the TEGGTask 6 Software Application, as well as the TEGGTask 5 Database and the TEGGTask 6 Database.

55. In the Beckstrom Agreement, Beckstrom agreed that the materials that TEGG provided to Beckstrom concerning the TEGG System, including the TEGGTask 5 Software Application and the TEGGTask 6 Software Application and the TEGGTask 5 Database and the TEGGTask 6 Database: (a) were confidential and proprietary to TEGG; (b) remained the sole property of TEGG; (c) would be used solely for the operation of Beckstrom's franchise; (d) would not be copied; and (e) would not be disclosed to third parties and/or be made accessible to third parties.

56. The Beckstrom Agreement expressly prohibits Beckstrom from making copies of any materials concerning the TEGG System, including the TEGGTask 5 Software Application, TEGGTask 6 Software Application, TEGGTask 5 Database, and TEGGTask 6 Database, and/or disclosing those materials to others without the prior written consent of TEGG.

57. The Beckstrom Agreement provides that, upon any breach of its confidentiality and termination obligations, Beckstrom shall pay all costs and expenses, including reasonable attorneys' fees incurred by TEGG.

58. On or about December 16, 2005, TEGG and Beckstrom mutually agreed in writing to terminate the Beckstrom Agreement (the "Termination Agreement").

59. The Termination Agreement terminated the Beckstrom Agreement effective February 1, 2006.

60. Pursuant to the Termination Agreement, Beckstrom affirmatively agreed to discontinue use of TEGG's confidential and proprietary materials, specifically including the TEGG System and all software that TEGG had provided to Beckstrom, which included the TEGGTask 5 Software Application, TEGGTask 6 Software Application, TEGGTask 5 Database, and TEGGTask 6 Database.

61. Beckstrom, both in the Termination Agreement and in a separate Affidavit notarized on January 30, 2006, further represented that it had returned to TEGG and/or discontinued use of all of TEGG's confidential and proprietary materials and systems, specifically including the software that TEGG had provided to Beckstrom—which included theTEGGTask 5 Software Application, TEGGTask 6 Software Application, TEGGTask 5 Database, and TEGGTask 6 Database—and that

Beckstrom's use of such materials, systems, and computer programs have been discontinued.

62. The Termination Agreement specifically provides that Beckstrom has a continuing duty to comply with the confidentiality obligations of the Beckstrom Agreement.

63. In violation of both the Beckstrom Agreement and the Termination Agreement, as well as in violation of federal copyright laws, in order to assist with the development of the EMX Software, Beckstrom provided Extensia with a copy of and/or unauthorized access to the TEGGTask 5 Software Application and/or the TEGGTask 6 Software Application, including the copyrighted TEGGTask 5 Database and/or the copyrighted TEGGTask 6 Database programmed with confidential and proprietary database schema, and other confidential and proprietary information and documentation relating to TEGG software.

...

69. This unauthorized access, provided by Beckstrom in violation of the Agreement and the Termination Agreement, provided Extensia with a significant advantage in developing the EMX Software. From the blueprint of the copyrighted TEGGTask 5 Database and/or the copyrighted TEGGTask 6 Database programmed with confidential and proprietary database schema, Extensia learned the structure, organization, and sequence of the entire TEGGTask 5 Software Application and/or the TEGGTask 6 Software Application, respectively. This learning process permitted Extensia to save hundreds if not thousands of hours of software development time because it learned what to do, or not to do, when developing the EMX Software.

...

123. Extensia and Beckstrom do not have, and have not sought, TEGG's permission to sell the EMX Software, which is a derivative version of the copyrighted TEGGTask 5 Software Application and/or the copyrighted TEGGTask 6 Software Application, including the copyrighted TEGGTask 5 Database and/or the copyrighted TEGGTask 6 Database programmed with confidential and proprietary database schema.

...

129. Despite the fact that Extensia has neither sought TEGG's permission nor provided attribution, Extensia has utilized the "TEGG" registered Trademark in its marketing efforts for the EMX Software.

(Docket No. 56 at ¶¶ 49, 54-63, 69, 123, 129).

TEGG also supplemented its claims for conversion, tortious interference, and civil conspiracy. First, TEGG alleges that Extensia converted TEGG's copyrighted property for its own use, including the TEGG software, databases, and screen images. (Docket No. 56 at ¶ 159). Secondly, TEGG avers that Beckstrom, as a former franchisee, is aware of the confidentiality agreements contained in the written franchise agreements between TEGG and its franchisees. (*Id.* at ¶ 167). TEGG further states that by actively marketing its EMX software and/or requesting TEGG's franchisees to provide it with access to or a copy of the TEGG database, Extensia is intentionally and knowingly interfering with TEGG's existing contractual relationships with its franchisees. (*Id.* at ¶ 171). By assisting Extensia with the marketing of Extensia's EMX software, TEGG contends Beckstrom is also intentionally and knowingly interfering with TEGG's contractual relationships with its franchisees, including the confidentiality agreements. (*Id.* at ¶ 172). Thirdly, TEGG alleges that Extensia and Beckstrom formed an agreement to infringe upon TEGG's copyrights, (*Id.* at ¶ 177), and each Defendant then acted on the agreement through unauthorized delivery of the TEGG software and databases to Extensia, and by the marketing of the allegedly infringing EMX software. (*Id.* ¶¶ 179-80).

## III.   PROCEDURAL HISTORY[3]

TEGG filed its Second Amended Complaint on July 30, 2008. (Docket No. 56). Beckstrom filed its Answer to Plaintiff's copyright claim and breach of contract claim in response to the Second

---

[3] For a more detailed discussion of the procedural history preceding Plaintiff's Second Amended Complaint, refer to Part III of the Court's previous Memorandum Opinion. *Tegg,* U.S. Dist. LEXIS 52184, at *5-9.

Amended Complaint on August 18, 2008. (Docket No. 59). Simultaneously, Beckstrom filed a Motion to Dismiss the tortious interference and civil conspiracy claims contained in the Second Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the Copyright Act of 1976 ("the Copyright Act") preempts the tortious interference claim and that both the tortious interference and civil conspiracy claims are improperly pled. (Docket No. 60). On the same day, Extensia filed its Answer to the copyright claim asserted in the Second Amended Complaint (Docket No. 62) as well as a Motion to Dismiss the conversion, tortious interference, and civil conspiracy claims of the Second Amended Complaint, alleging that the Copyright Act preempts all three counts. (Docket No. 63).

Both Defendants filed Briefs in Support of their respective motions to dismiss (Docket Nos. 61 and 64). TEGG, in turn, filed a Response to both motions to dismiss on September 5, 2008. (Docket Nos. 65 and 66). On September 22, both defendants issued a Reply to the Response to the Motion to Dismiss. (Docket Nos. 68 and 69). The pending motions are now fully briefed and ripe for disposition.[4]

## IV.    LEGAL STANDARD

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, – U.S.–, 127 S.Ct. 1955 (2007), a complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."

---

[4] Since the filing of the pending motions to dismiss, the parties have been ordered to Early Neutral Evaluation pursuant to this Court's Alternative Dispute Resolution Policies and Procedures. *ADR Policies and Procedures for the United States District Court for the Western District of Pennsylvania, available at:* http://coldfusion.pawd.uscourts.gov/ adr/Documents/adrpoliciesprocedures.pdf. They are also engaged in limited discovery and expert review in preparation for same.

*Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)(quoting *Twombly*, 127 S.Ct. at 1974). While *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), allowed dismissal of a claim only if "no set of facts" could support it, under *Twombly,* a claim for relief now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 127 S.Ct. at 1965. In order to satisfy the requirement of Fed. R. Civ. P. 8(a)(2) that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations in order "to raise a right to relief above the speculative level." *Ayers v. Osram Slyvania, Inc.*, Civ. A. No. 07-1780, 2008 U.S. Dist. LEXIS 72644, at *6 (M.D. Pa. Sept. 24, 2008) (citing *Twombly*, 127 S.Ct. at 1965).

In considering a Rule 12(b)(6) motion, a court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party. *Umland v. Planco Fin. Servs.*, Civ. A. No. 06-4688, 2008 U.S. App. LEXIS 19225, at *10 (3d Cir. Sept. 9, 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir.2002); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 n. 8 (3d Cir.1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The failure-to-state-a-claim standard of Rule 12(b)(6) seeks to promote judicial economy by eliminating unwarranted discovery and factfinding. *United States ex. rel. Repko v. Guthrie Clinic, P.C.*, 557 F.Supp.2d 522, 525 (M.D. Pa. 2008). Therefore, a plaintiff must put forth

sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch.,* Inc., 522 F.3d 315 (3d Cir. 2008) (citing *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008); citing *Twombly*, 127 S.Ct. at 1965)). Generally, this does not impose a heightened burden on the claimant above that already required by Rule 8, but instead calls for fair notice of the factual basis of a claim while "rais[ing] a reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, Civ. A. No. 08-411, 2008 U.S. Dist. LEXIS 57988, at *7 (W.D. Pa. July 30, 2008) (citing *Phillips*, 515 F.3d at 234; and *Twombly*, 127 S.Ct. at 1964-65).

After amending a complaint once as a matter of course or after an answer has been filed, a plaintiff may amend only with the leave of court or the written consent of the opposing party, but "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). While the grant or denial of opportunity to amend is within the discretion of the district court, "outright refusal to grant leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Futility is a ground that could justify a denial of leave to amend. *Id.* "Futility" means that the complaint, as amended, "would fail to state a claim upon which relief could be granted." *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). In assessing "futility" the district court applies the same standard of legal sufficiency as set forth under Rule 12(b)(6). *See* 2 James Wm. Moore et al., Moore's Federal Practice, § 15.15[3], at 15-47 to 15-48 (3d ed. 2000). Accordingly, "if a claim is vulnerable to dismissal under Rule 12(b)(6) but the

plaintiff moves to amend, leave to amend must generally be granted unless the amendment *would not cure the deficiency*." *Shane*, 213 F.3d at 115 (emphasis added).

## V.   DISCUSSION

### Preemption of State Law Claims

In their respective motions to dismiss, Defendants assert that Section 301 of the Copyright Act, 17 U.S.C. § 301, ("Section 301") preempts Plaintiff's state law claims of tortious interference, conversion, and civil conspiracy.[5]  Section 301 provides, in pertinent part:

> All legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103...are governed exclusively by this title....  No person is entitled to any such right or equivalent right in any such work under the common law or statutes of any state.

17 U.S.C. § 301(a).  Congress clearly expressed its purpose: "the intention of Section 301 is to preempt and abolish any rights under common law and state statutes that are equivalent to copyright and extend to works within the Federal Copyright Law."  H.R. Rep. No. 1476, 94th Cong. 2d Sess. 130, reprinted in 1976 U.S.C.C.A.N. 5659, 5746.  However, nothing within the Copyright Act annuls or limits any rights or remedies under the common law statutes of any state "with respect to activities violating legal or equitable rights that are *not equivalent* to any of the exclusive rights within the general scope of copyright as specified by Section 106."  17 U.S.C. § 301(b)(3)(emphasis added).

---

[5]  In the previous Memorandum Opinion, this Court did not resolve Defendants' argument that Plaintiff's common law claims were preempted by the copyright laws because Plaintiff had not properly pled a copyright infringement claim. *Tegg*, 2008 U.S. Dist. LEXIS 52184, at *25-28.

The Senate version of section 301(b)(3) contained a list of illustrative examples of rights that were not equivalent to any rights within the general scope of copyright, namely rights against misappropriation, breaches of contract, and breaches of trust. Conference Comm. Notes, H.R. Conf. Rep. No. 94-1733, 94th Cong. 2d Sess. 130, *reprinted in* 1976 U.S.C.C.A.N. 5809, 5820. The House version of section 301, the version ultimately adopted by Congress, deleted the list of examples. In the legislative history, Congress noted that under section 301(b)(3), the "evolving common law rights of 'privacy,' 'publicity,' and trade secrets, and the general laws of defamation and fraud, would remain unaffected as long as the causes of action contain elements, such as ... a breach of trust or confidentiality, that are different in kind from copyright." 1976 U.S.C.C.A.N. at 5748. Congress also noted that "to the extent that the unfair competition concept known as 'interference with contractual relations' is merely the equivalent of copyright protection, it would be preempted." *Id.* However, despite this legislative history, federal courts must still grapple with whether a particular cause of action is preempted because any direct reference to specific actions was deleted from the main bill. *See Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 217 (3d Cir. 2002).

As stated in this Court's previous Memorandum Opinion, "'[i]n order for a state common law or statutory claim to be preempted by the Copyright Act, the Defendant must demonstrate that (1) the work in question falls within the type of works protected by the Copyright Act; and (2) the state law seeks to enforce rights that are equivalent to any of the exclusive rights of copyright found in Section 106 of the Copyright Act.'" (Docket No. 51 (quoting *Tartan Software, Inc. v. DRS Sensors & Targeting Systems, Inc.*, Civ. A. No. 06-1147, 2007 WL 2998441, *4 (W.D. Pa. October

11, 2007) (citing 17 U.S.C. § 301; *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 216-17 (3d Cir. 2002); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F.Supp.2d 552, 563-564 (D. N.J. 2002))); *see also Daley v. Firetree, Ltd.*, Civ. A. No. 04-2213, 2006 U.S. Dist. LEXIS 4061 at *3 (M.D. Pa. Jan. 19, 2006); *FedEx Ground Package Sys. v. Applications Int'l Corp.*, Civ. A. No. 03-1512, 2005 U.S. Dist. LEXIS 26651 (W.D. Pa. Nov. 4, 2005); *Long v. Quality Comp. App., Inc.*, 860 F. Supp. 191, 196 (M.D. Pa. 1994) (citing *Del Madera v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir. 1987)); *see also Harper & Row Pub., Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985) ("When a right defined by state law may be abridged by an act which, in and of itself, would infringe one of the exclusive rights, the state law in question must be deemed preempted."). Essentially, "if a state created right is 'within the general scope of copyright,' it is subject to preemption, even if the precise contours of the right differ from any of those conferred by Section 106 [of the Copyright Act.]" 1 MELVILLE B. NIMMER AND DAVID NIMMER, NIMMER ON COPYRIGHT, §1.01[B][1] (quoting 17 U.S.C. §301(a)).

The Copyright Act provides for a number of exclusive rights, including the right to distribute, reproduce, and display a work, as well as the right to produce derivative works. 17 U.S.C. § 106.[6] Section 301 preempts only those state law rights which may be abridged by an act

---

[6]

Section 106, Exclusive Rights in Copyrighted Works, provides:

Subject to Sections 107 through 122, the owner of a copyright has the exclusive right to do and authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;
(2) to prepare derivative works based on the copyrighted work;
(3) to distribute copies or phonorecords of the copyrighted work by sale or other transfer of

that itself would infringe on one of these exclusive rights. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) (citing *Computer Assocs. Int'l v. Altai*, 982 F.2d 693 (2d Cir. 1992)).

To determine whether a claim is either functionally equivalent to or qualitatively different from a right protected by the Copyright Act, the United States Court of Appeals for the Third Circuit has adopted the "extra element" test. *Dun & Bradstreet*, 307 F.3d at 217-18. If a state cause of action requires proof of an "extra element" beyond reproduction, distribution, display, or preparation of derivative works, then "the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action." *Id.* at 217 (citing *Data General Corp. v. Grumman Systems Support Corp.* 36 F.3d 1147, 1164 (1st Cir. 1994)). "To determine whether a claim is qualitatively different, the Court looks at what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Daley,* 2006 U.S. Dist. LEXIS 4061*,* at * 7 (quoting *Briarpatch,* 373 F.3d at 306). A right is equivalent to copyright if it is "infringed by the mere act of reproduction, performance, distribution, or display," and "the fact that the state-created right is either broader or narrower than its federal counterpart will not save it from preemption." NIMMER, §1.01[B][1].

Even if a state cause of action has an element that appears to be beyond the scope of a

---

ownership;
(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures or other audiovisual works, to perform the copyrighted work publicly;
(5) in the case of literary, musical dramatic, and choreographic works, pantomimes, and motion pictures or other audiovisual works, to display the copyrighted work publicly;
(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106.

copyright claim, "not every extra element is sufficient to establish a qualitative variance between rights protected by federal copyright law and that by state law." *Dun & Bradstreet*, 307 F.3d at 218 (citations omitted). Courts have taken a "restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." *Daley*, 2006 U.S. Dist. LEXIS 4061, at *7 (quoting *Briarpatch*, 373 F.3d at 306).[7]

Plaintiff's software easily satisfies the first prong of the preemption test. It is well-settled that computer source codes may be protected by copyright. *See Long,* 860 F.Supp. at 196 (citing *Apple Computer, Inc. v. Franklin Computer Corp.* 714 F.2d 1230 (3d Cir. 1983) ("a computer program...is a literary work and is protected from unauthorized copying.")). Defendants challenge Plaintiff's claims of tortious interference, conversion, and civil conspiracy under the second prong of the extra element test by arguing these claims are fundamentally equivalent to a claim under the Copyright Act and therefore preempted. Plaintiff counters that each of its claims contains an "extra element" that makes the claims qualitatively different from a copyright claim, thus, they are not preempted. The Court will now address the parties' preemption arguments for each state law claim, in turn.

### A. Civil Conspiracy

#### 1. Choice of Law

In its brief in support of its Motion to Dismiss, Defendant Extensia raises a choice of law

---

[7]

For example, a claim such as misappropriation of trade secrets based on a breach of duty of confidentiality does contain an extra element that makes the claim qualitatively different from a copyright claim, namely the breach of a duty separate from the statutory rights protected by the Copyright Act. *Dun & Bradstreet*, 307 F.3d at 218.

issue regarding Plaintiff's claim of civil conspiracy.  (Docket No. 64 at 9).  As acknowledged by

both Plaintiff and Defendant Extensia,[8] the primary difference in the law is not between the elements

of the state law causes of action, but rather the determination of federal district courts within the

Third and Fourth Circuits as to whether a state law civil conspiracy claim is preempted by Section

301 of the Copyright Act.  (*See* Docket No. 64 at 9; Docket No. 66 at 11).  As this matter involves

interpretation of a federal statute, this Court is required to apply the decisions of the United States

Court of Appeals for the Third Circuit interpreting this statute.  *See, e.g., Vujosevic v. Rafferty*, 844

F.2d 1023, 1030 n.4 (3d Cir. 1988) ("It is, of course, patent that a district court does not have the

discretion to disregard controlling precedent simply because it disagrees with the reasoning behind

such precedent."); *Mitchell Plastics, Inc. v. Glass, Molders, Plastics, and Allied Workers Int'l

Union*, 946 F.Supp. 401, 406 (W.D. Pa. 1996) ("The Third Circuit binds all within its jurisdiction.");

*Finch v. Hercules, Inc.*, 865 F.Supp. 1104, 1121 (D. Del. 1994) ("[I]n the absence of compelling

circumstances, a district court owes blind fealty to the latest precedent of the circuit court.").

Neither party points to any decision from either Court of Appeals that is controlling on the issue of

whether a state law civil conspiracy claim is preempted by the Copyright Act.  Further, through its

own research the Court has not found any such decision.

     As state law will govern only if the claims are not preempted, the Court need not discuss any

choice of law issue unless it first determines that Plaintiff's state law civil conspiracy claims are not

---

[8]

     In its Brief in Support, Defendant Extensia argues that "[t]he elements of a civil conspiracy claim are similar under Virginia and Pennsylvania law. However, Fourth Circuit courts have held that civil conspiracy claims are preempted by copyright law, *see, e.g. Hoey v. Dexel Systems Corp.*, 716 F. Supp. 222, 224 (E.D. Va. 1989); *Wharton v. Columbia Pictures Indus.*, 907 F. Supp. 144, 146 (D. Md. 1995); whereas Third Circuit [courts] have held that such claims are not preempted. *See, e.g. Sullivan Assocs., Inc.*, 1997 U.S. Dist. LEXIS 20043, *16-17." (Docket No. 64 at 9).

preempted.[9]  *See Johnston v. Katz*, Civ. A. No. 94-6693, 1996 WL 107402 (E.D. Pa. March 7, 1996) (determining whether the Copyright Act preempts state contract law before deciding the choice of law issue); *see also Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*, 661 F.2d 479, 483 (5th Cir. 1981) (holding that "[a] choice of law provision [ ... ] merely designates the state whose law is to be applied to the extent its use is not preempted by nor contrary to the policies of the 1909 and 1976 Copyright Acts.").  The Court now turns to Defendant Extensia's argument that Plaintiff's civil conspiracy claims are preempted by the Copyright Act.

### 2.  Preemption of Plaintiff's Civil Conspiracy Claims

In its Second Amended Complaint, Plaintiff avers the following facts in support of its civil conspiracy claim:

> 176. TEGG incorporates herein by reference paragraphs 1-175 of this Second Amended Complaint as though set forth in full.[10]

---

[9]

As this Court sits within the Commonwealth of Pennsylvania, the Court must apply Pennsylvania's choice of law rules to decide which state's law applies.  *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that a court must apply the choice of law rules of the forum state).  Pennsylvania utilizes a two-part analysis to determine choice of law issues: the court first evaluates whether a true conflict exists between the laws of potentially interested jurisdictions, and if there is a true conflict, the court must determine which state has the greater interest in the application of its laws.  *Lejeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996); *SunGuard Recovery Servs., L.P. v. Comcar Indus.*, 2003 U.S. Dist. LEXIS 15673, at *11 (E.D. Pa. Aug. 19, 2003).  Defendant Extensia raises a choice of law issue in its claim for civil conspiracy regarding the applicability of Virginia or Pennsylvania law.  (Docket No. 64 ).  The Court notes, however, that Plaintiff Tegg is incorporated under the laws of the state of Delaware and that, in the event that a conflicts analysis is necessary, Delaware law would need to be considered by the Court.  Furthermore, Defendant Extensia has not pointed to a controlling decision that holds that all civil conspiracy claims under Virginia law are preempted.  Unless there is a meaningful conflict between the laws of either Pennsylvania, Virginia, or Delaware, the Court will simply reference the applicable elements of civil conspiracy in all three jurisdictions.  *See Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 351 F. Supp. 2d 436, 442 n.4 (M.D.N.C. 2005) (referring to applicable elements of both Colorado and North Carolina state laws to determine copyright preemption).

[10]

Paragraphs 1-175 in Plaintiff's Second Amended Complaint contain factual allegations in support of its claims of copyright infringement, breach of contract, conversion, tortious interference with contractual relations and civil conspiracy.  *See* Section II, Facts, *supra*.  With respect to its copyright infringement claim, Plaintiff sets forth factual allegations regarding the copyright registration of its TEGGTask Software, modules, and databases as well as the alleged infringement thereof by Extensia including averments that Beckstrom provided Extensia with unauthorized access to

15

177. Sometime in the period between the beginning of 2005 and the present, Extensia and Beckstrom formed an agreement to infringe upon TEGG's copyrights in the TEGGTask 5 Software Application and/or the TEGGTask 6 Software Application, including the TEGGTask 5 Database and/or the TEGGTask 6 Database programmed with confidential and proprietary database schema, and/or the TEGGTask 5 Screen Images and/or the TEGGTask 6 Screen Images.

179. In furtherance of the conspiracy, Beckstrom delivered a copy to, and/or provided unauthorized access to, Extensia, of the TEGGTask 5 Software Application and/or theTEGGTask 6 Software Application and/or the TEGGTask 5 Database and/or the TEGGTask 6 Database programmed with confidential and proprietary database schema, and other confidential and proprietary information and documentation relating to TEGG software to Extensia.

180. Also in furtherance of the conspiracy, Beckstrom and Extensia have collaborated in the marketing of the infringing EMX Software.

(Docket No. 56 at ¶¶ 176-77, 179-80).

Given these allegations, Defendant Extensia argues that Plaintiff's civil conspiracy claim is functionally equivalent to a copyright claim and therefore preempted, citing district court decisions from the Fourth Circuit in support of its argument. (Docket No. 64 at 9). To the contrary, Plaintiff, relying on a decision from a district court within the Third Circuit, *Sullivan Assoc's, Inc. v. Dellots, Inc.*, Civ. A. No. 97-5457, 1997 U.S. Dist. LEXIS 20043 (E.D. Pa. December 16, 1997), argues that a claim for civil conspiracy is qualitatively different than a copyright claim, and therefore survives

_____

the Tegg software which was then used by Extensia in its production of similar software. (Docket No. 56 at ¶¶ 14-49, 63-122). Plaintiff avers that the two software programs are similar in functioning, performance and in sequence, structure and organization. In addition, Plaintiff sets forth the applicable terms and conditions of its agreements with Beckstrom and allegations of certain conduct which Plaintiff maintains constitute a breach of said agreements. (*Id*. at ¶¶ 49-76). Plaintiff also maintains that Beckstrom and Extensia collaborated in marketing the Extensia software, including to Plaintiff's current franchisees. (*Id*. at ¶¶ 123-129). Finally, paragraphs 130-188 contain the facts pled in support of each of the claims in Plaintiff's Second Amended Complaint: (1) Count I, copyright infringement (*Id*. at ¶¶ 130-149); (2) Count II, breach of contract against Beckstrom (*Id*. at ¶¶ 150-157); (3) Count III, conversion against Extensia (*Id*. at ¶¶ 158-164); (4) Count IV tortious interference with contractual relations (*Id*. at ¶¶ 165-175); and (5), Count V, civil conspiracy (*Id*. at ¶¶ 176-188).

preemption. (Docket No. 66 at 11). Defendant Beckstrom has also moved to dismiss the civil conspiracy claim on grounds that Plaintiff failed to properly set forth the element of actual legal damages. (Docket No. 61 at 6).

As noted, the parties have not identified a binding decision helpful to the Court's analysis of the preemption of Plaintiff's civil conspiracy claim by the Copyright Act.[11] The Court, however, is instructed by the analytical framework for determining preemption under the Copyright Act set forth by the United States Court of Appeals for the Third Circuit in *Dun & Bradstreet* described above, and will apply such framework to determine whether Plaintiff's civil conspiracy claims are preempted. *See Dun & Bradstreet*, 307 F.3d at 217; *Trandes Corp. B. Guy f. Atkinson Co.*, 996 F.3d 655, 659 (4th Cir. 1993). Further, while the Third Circuit has not directly ruled on the issue, courts in other jurisdictions that have applied the extra element test have found state law claims for civil conspiracy preempted by the Copyright Act. *See MDM Group Assocs. v. Emerald Isle Realty Co.*, Civ. A. No. 07-48-D, 2008 U.S. Dist. LEXIS 51057, at *18 n.4 (E.D.N.C. July 1, 2008); *Irwin v. ZDF Enters, GmbH*, Civ. A. No. 04-827, 2006 U.S. Dist. LEXIS 6156, *8-14 (S.D.N.Y. Feb. 16,

---

[11] Plaintiff's reliance on *Sullivan* in support of its argument that a claim of civil conspiracy is not preempted by the Copyright Act is not persuasive for the following reasons. First, it is a district court decision which is not controlling on this Court. Second, the court in *Sullivan* quoted a standard similar to the extra element test ultimately adopted by the Third Circuit in *Dun & Bradstreet*. *Sullivan*, 1997 U.S. Dist. LEXIS 20043, at * 1. However, the *Sullivan* court did not apply the complete extra element test that has subsequently been adopted by the Third Circuit. In *Dun & Bradstreet*, the United States Court of Appeals for the Third Circuit relied on several key court of appeals decisions from other circuits, including *Computer Assocs. Int'l v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992). *Dun & Bradstreet*, 307 F.3d at 217-18. *Computer Assocs.* directs district courts to consider "what a plaintiff seeks to protect, the theories in which the matter is sought to be protected, and the rights sought to be enforced" when determining whether a state law claim is qualitatively different from a copyright claim. *Id.* at 716; *see also Briarpatch*, 373 F.3d at 306; *Daley*, 2006 U.S. Dist. LEXIS 4061, at * 7. As the court in *Sullivan* did not apply this key aspect of the extra element test, that court's decision to allow the plaintiff to proceed with its state law civil conspiracy claims does not persuade this Court. Third, the *Sullivan* court did not consider the applicability of contributory infringement under the Copyright Act that has been recognized in the preemption analysis conducted by other courts, as explained in further detail below.

2007); *Higher Gear Group, Inc. v. Rockernbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 959-60 (N.D. Ill. 2002); *Cooper v. Sony Music Entm't, Inc.*, Civ. A. No. 01-0941(DH), 2002 U.S. Dist. LEXIS 3832, at *11-12 (S.D. Tex. Feb. 22, 2002); *Brown v. McCormick*, 23 F. Supp. 2d 594, 608 (D. Md. 1998); *Wharton v. Columbia Pictures Indus*, 907 F.Supp. 144 (D. Md. 1995); *Aqua Bay Concepts, Inc. v. Grosse Point Bd. of Realtors*, Civ. A. No. 91-74819(JAC), 1992 U.S. Dist. LEXIS 16038, at *10-11 (E.D. Mich. May 7, 1992). Moreover, courts have found that the Copyright Act does not preempt claims for civil conspiracy in factual scenarios wherein the alleged conspiracy involves a conspiracy to commit an underlying tort or wrong other than copyright infringement, such as fraud. *See Xpel Techs. Corp. v. Am. Filter Film Distribs.*, 2008 U.S. Dist. LEXIS 60893 at *24 (W.D. Tex. Aug. 11, 2008) (holding that where defendants conspired to commit the torts of fraud and misrepresentation along with copyright infringement, the conspiracy claim was not preempted with respect to those torts); *Cooper*, 2002 U.S. Dist. LEXIS 3832, at *11-12 (denying defendant's motion to dismiss plaintiff's civil conspiracy claim as preempted by the Copyright Act to the extent that the conspiracy involves the tort of common law fraud).

The elements of civil conspiracy under Pennsylvania, Delaware and Virginia law are similar, and for convenience, the Court will reference Pennsylvania law in its preemption analysis.[12] To state a claim for civil conspiracy under Pennsylvania law, a plaintiff must allege the following: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do

---

[12]

Virginia defines civil conspiracy as "a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff." *Glass v. Glass*, 228 Va. 39, 47 (1984). Delaware defines civil conspiracy as "(1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damages." *Atamian v. Nemours Health Clinic*, 2001 Del. Super. LEXIS 438 (Del. Super. Ct., Nov. 14, 2001).

a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. *Strickland v. University of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997). Plaintiff argues that its civil conspiracy claim is qualitatively different because it requires allegations of an agreement and intent to infringe. (Docket No. 66 at 11).

With respect to the alleged agreement element of Plaintiff's civil conspiracy claim, federal district courts have held that such element is not qualitatively different from a copyright infringement claim. These courts so hold because an agreement to infringe is not qualitatively different from the elements of a claim under the copyright laws, which recognize the theory of contributory infringement. For example, in *Irwin*, the District Court for the Southern District of New York determined that although a claim of conspiracy may require proof of elements different than those required to prove copyright infringement, "the nature of the misconduct that conspiracy law seeks to redress is *not qualitatively different from that addressed by contributory and vicarious infringement claims.*" *Irwin*, 2006 U.S. Dist. LEXIS 6156, at *8-14 (emphasis added). Likewise, in *Cooper*, the District Court for the Southern District of Texas reasoned that because "copyright law already recognizes the concepts of contributory infringement and vicarious copyright infringement...[a] civil conspiracy claim *does not add substantively to the underlying federal copyright claim and should be preempted.*" *Cooper,* 2002 U.S. Dist. LEXIS 3832, at *11 (emphasis added). Furthermore, the District Court for the District of Maryland held that "while the formulation for civil conspiracy adds the element of agreement to the elements that copyright infringement requires, the right protected by such a cause of action in this case would serve merely to vindicate the same right as under the Copyright Act." *Brown,* 23 F. Supp. 2d at 608.

The United States Court of Appeals for the Third Circuit has recognized that contributory infringement extends joint and several liability to those who participate in copyright infringement. *See Columbia Pictures Indus. v. Redd Horne*, 749 F.2d 154 (3d Cir. 1984). Under this theory of liability, it is "well-settled that one who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing activity of another may be held liable as a contributory infringer." *Id.* at 160 (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)); *see also AMC Tech. L.L.C. v. SAP AG*, Civ. A. No. 05-4708, 2005 U.S. Dist. LEXIS 27905 (E.D. Pa., Nov. 3, 2005) (finding two parties liable for copyright infringement under the theory of contributory infringement based on the fact that the defendant made unauthorized copies of the plaintiff's software and distributed same with the purpose of inducing its customers to copy it).

Here, Plaintiff essentially avers that Defendants formed a conspiracy to commit copyright infringement. In fact, Plaintiff alleges that Extensia and Beckstrom formed an agreement to provide unauthorized access to Plaintiff's copyrighted software and databases, used that access to gain an advantage in developing the EMX software and agreed to collaborate in marketing the allegedly infringing software. (*See* Docket No. 56 at ¶¶ 176-84). Based on these allegations, both Beckstrom and Extensia could be liable under the Copyright Act as contributory infringers. As the Third Circuit recognizes the theory of contributory infringement, the Court finds the agreement element of a state law civil conspiracy claim, to the extent that it covers an agreement to commit copyright infringement, does not establish conduct that is qualitatively different from a copyright infringement claim because the copyright law already covers such conduct. *See Dun & Bradstreet*, 307 F.3d at

217-218.

Regarding the claimed difference of the intent element of Plaintiff's civil conspiracy claim from its copyright action, the Court is mindful of decisions which have analyzed whether the element of intent in other state law causes of action is qualitatively different. Generally, the element of intent in any cause of action will not establish qualitatively different conduct if it merely "goes to the scope of the right." *Harper & Row*, 723 F.2d at 201. The United States Court of Appeals for the Fourth Circuit has held that the intent element of a claim under the Virginia Computer Crimes Act "did not change the state claim from one of unauthorized copying." *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 230 (4th Cir. 1993). Similarly, courts have found that the intent element of unfair competition does not establish conduct qualitatively different from copyright infringement. *See Orange County Choppers v. Olaes Enters.*, 497 F.Supp.2d 541, 556 (S.D.N.Y. 2007) (determining that a state of mind, intent, or awareness element that alters an actions's scope but not its nature will not save an unfair competition claim from preemption).[13] In *Aqua Bay Concepts, Inc. v. Grosse Point Bd. of Realtors*, the court noted that "[plaintiff's] use of the terms 'deception' and 'conspiracy' focus on the issues of awareness and intent even though the underlying action (i.e., the Defendant's alleged unlawful use of a copyrighted map), remains essentially the same under the state claim." *Aqua Bay,* Civ. A. No. 91-74819, 1992 U.S. Dist. LEXIS 16038 (E.D. Mich. May 7, 1992).

In this Court's estimation, like the intent element present in other state law causes of action,

---

[13]

As discussed below, Courts have also reasoned that the intent element of a tortious interference claim does not establish conduct qualitatively different from copyright infringement. *See MCS Services, Inc. v. Raleigh Johnsen, et al.*, Civ. A. No. 01-4430, 2002 U.S. Dist. LEXIS 16910, at *26 (E.D. Pa. Aug. 13, 2002); *Daley*, 2006 U.S. Dist. LEXIS 4061, at *3.

the intent element of a state law civil conspiracy claim does not make such claim qualitatively different from a copyright claim when the underlying action is copyright infringement and the intent alleged is only an intent to form an agreement to commit copyright infringement. Accordingly, the Court finds that the intent element alleged here is not an extra element which makes Plaintiff's conspiracy claim qualitatively different than its copyright claim.

Overall, Plaintiff wishes to use the Copyright Act, coupled with related state law claims, to protect its copyrighted software and databases and enforce its rights to distribute, reproduce, and create derivative works based on its copyrighted software. These are all rights governed by the Copyright Act. 17 U.S.C. § 106. Unlike the situation in *Dun & Bradstreet*, where the plaintiff sought to protect rights violated by the breach of an agreement that the court found was beyond the scope of copyright, *Dun & Bradstreet*, 307 F.3d at 218, Plaintiff here does not seek to enforce any rights other than those protected by the Copyright Act. Further, unlike the situation in *Cooper*, 2002 U.S. Dist. LEXIS 3832, at *11-12, Plaintiff does not allege that Defendants conspired to commit any tort or wrong other than copyright infringement. The allegations of agreement and intent in Plaintiff's civil conspiracy claim add nothing of substance to its copyright infringement claim. Thus, the Court finds that Plaintiff's civil conspiracy claim, whether brought under Pennsylvania, Virginia, or Delaware law, contains no extra elements that make its civil conspiracy claim qualitatively different than a claim of copyright infringement and, as such, is preempted. Accordingly, Defendant Extensia's Motion to Dismiss Plaintiff's civil conspiracy claim is **GRANTED**. Having granted Extensia's motion to dismiss for failure to state a claim on grounds that Plaintiff's civil conspiracy claim is preempted by the Copyright Act for the reasons stated above

and further finding that said rationale is equally applicable to the civil conspiracy claim alleged against Defendant Beckstrom, Plaintiff's civil conspiracy claim against Defendant Beckstrom is **DISMISSED**.[14]

### B. Preemption of Plaintiff's Tortious Interference Claims

As to Plaintiff's claim for tortious interference, Plaintiff alleges that:

165. TEGG incorporates herein by reference paragraphs 1-164 of this Second Amended Complaint as though set forth in full.[15]

167. Beckstrom, as a former franchisee of TEGG, is acutely aware of the fact that TEGG has written franchise agreements with its franchisees that contain confidentiality obligations.

168. The written franchise agreements between TEGG and its franchisees bar a franchisee from the disclosure of TEGG's confidential and proprietary information, including the TEGGTask 5 Software Application and/or the TEGGTask 6 Software Application, including the TEGGTask 5 Database and/or the TEGGTask 6 Database, and/or the TEGGTask 5 Screen Images and/or the TEGGTask 6 Screen Images.

171. Extensia's conduct in (a) actively marketing the infringing EMX Software

---

14

The Court notes that Defendant Beckstrom argues in its Motion to Dismiss that Plaintiff did not properly plead actual damages in its civil conspiracy claim but does not argue that Plaintiff's civil conspiracy claim is preempted by the Copyright Act. (Docket No. 61). While Beckstrom did not argue or otherwise join in Extensia's motion to dismiss on preemption grounds, "a court may dismiss claims *sua sponte* where the inadequacy of a claim is apparent as a matter of law." *WM High Yield Fund v. O'Hanlon*, 2005 U.S. Dist. LEXIS 12064, at *39 n. 7 (E.D. Pa. May 13, 2005) (citing *Erie City Retirees Ass'n v. City of Erie*, 838 F. Supp. 1048, 1050 (E.D. Pa. 1993)); *See also Villanova v. Solow*, Civ. A. No. 97-6684, 1998 U.S. Dist. LEXIS 14686, at *11 (E.D. Pa. Sept. 18, 1998); *Silverstein v. Percudani*, 422 F.Supp.2d 468, 473 (M.D. Pa. 2006). The Court has found that Plaintiff's civil conspiracy claim against Extensia is preempted by the Copyright Act and dismissed said claim for failure to state a claim upon which relief can be granted. As Plaintiff's civil conspiracy claim and the facts pled in support thereof are also alleged against Beckstrom, the Court's reasoning for dismissing the claim is equally applicable to Beckstrom. Accordingly, the Court will *sua sponte* dismiss Plaintiff's civil conspiracy claim against Beckstrom.

Having dismissed the civil conspiracy claim against Defendant Beckstrom, the Court need not resolve Beckstrom's argument that said claim must be dismissed based on alleged pleading deficiencies. Accordingly, Beckstrom's motion to dismiss Plaintiff's civil conspiracy claim is therefore denied, as moot.

15

*See* n. 10, *supra*.

and/or (b) requesting TEGG's franchisee's to provide Extensia with access to and/or a copy of the franchisee's TEGGTask 5 Database and/or TEGGTask 6 Database intentionally, knowingly, and without justification or privilege interferes with TEGG's existing contractual relationships with its franchisees.

172. Beckstrom's conduct in assisting Extensia with the marketing of the infringing EMX Software, including serving as a reference for the EMX Software, intentionally, knowingly, and without justification or privilege interferes with TEGG's contractual relationships with its franchisees.

(Docket No. 56 at ¶¶ 165, 167-68, 171-72).

Defendants both argue that Plaintiff's tortious interference claim is preempted by the Copyright Act because such a claim does not require any "extra" element that would make it qualitatively different than a copyright action. (*See* Docket No. 61 at 4; Docket No. 64 at 8). Plaintiff counters that its tortious interference claim alleges specific acts by both Defendants that make its claim qualitatively different than a copyright claim and therefore, not susceptible to preemption. (*See* Docket No. 65 at 8 and Docket No. 66 at 9). Consequently, the primary issue before this Court is whether TEGG's tortious interference claim is functionally equivalent to a claim allowed by the Copyright Act.

Under Pennsylvania law,[16] a claim of tortious interference must include allegations satisfying the following four elements:

(1) The existence of a contractual or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

---

[16]

Defendant Extensia concedes that the state law claims of tortious interference and conversion under Pennsylvania and Virginia law are "virtually identical" and does not raise a choice of law issue regarding these claims. (Docket No. 64). For convenience, the Court references Pennsylvania law with respect to those claims.

*MCS Services,* 2002 U.S. Dist. LEXIS 16910, at *22. With respect to Plaintiff's claim of tortious interference, numerous federal court decisions have held that tortious interference claims are preempted by federal copyright law. *See Daley*, 2006 U.S. Dist. LEXIS 4061, at *16-17; *MCS Services, Inc.*, 2002 U.S. Dist. LEXIS 16910, at *26-27 (holding that tortious interference claim based on distribution of copyrighted software and therefore preempted); *Titan Sports, Inc. v. Turner Broadcasting Systems, Inc.*, 981 F. Supp. 65, 74 (D. Conn. 1997) (holding that tortious interference claim emerges from unauthorized reproduction, distribution, performance, etc. of copyrighted material and therefore is preempted); *Long,* 860 F. Supp. at 196-97 (holding that the tortious interference claim failed the extra element test). Furthermore, "[i]nsofar as unauthorized reproduction, distribution, performance or display causes the plaintiff to lose the benefits that would flow from an actual or prospective contract whereby plaintiff would authorize any such acts, the rights created by the tort of contract interference do not appear to differ qualitatively from rights under copyright." NIMMER, §1.01[B][3][a][ii].

Plaintiff argues that the efforts of both Defendants to market the EMX software directly to TEGG franchisees violated the franchise agreement between TEGG and its franchisees. (Docket 65 at 7). According to Plaintiff, both Defendants knew that these efforts would result in the violation of the confidentiality obligations contained therein. (Docket No. 65 at 7 and Docket No. 66 at 8). In support of this argument, Plaintiff cites to a single case, *Cassway v. Chelsey Historic Props. I, L.P.,* Civ. A. No. 92-4124, 1993 WL 64633 (E.D. Pa. Mar. 4, 1993), in which the court held that the plaintiff's tortious interference claim was not preempted by the Copyright Act.

That case involved a contract the plaintiff had with two of its consultants. *Cassway*, 1993

WL 64633 at *5.[17]  The plaintiff alleged that one of the defendants (a non-party to the agreement) negotiated directly with the plaintiff's consultants without paying the plaintiff its fees allegedly due under their contract.  *Id.*  The court determined that the defendant's failure to pay the plaintiff for negotiating with and retaining its consultants under the contract was the basis for the plaintiff's tortious interference claim, not the defendant's improper distribution of plaintiff's copyrighted architectural drawings.  *Id.*  In other words, to prove its tortious interference claim, the plaintiff had to show a breach of a promise to pay for negotiating with its consultants, which was a right entirely distinct from the right enumerated in Section 106 of the Copyright Act.  Here, Plaintiff argues that the purpose of Defendants' act of marketing the EMX software was to induce TEGG franchisees to turn over TEGG's software databases in breach of their confidentiality obligations.  Therefore, according to Plaintiff, these acts of marketing somehow mirror the defendant's conduct in *Cassway* and, therefore, amount to an extra element that places its claim beyond the scope of the Copyright Act.

Defendant Beckstrom asserts in its Responses to Defendants' Motions to Dismiss (Docket Nos. 65 and 66) that Plaintiff alleges for the first time that Defendants marketed the EMX software with the intent to induce the breach of confidentiality obligations.  (Docket No. 69 at 3).  According to Defendant Beckstrom, these allegations do not appear within the Second Amended Complaint and, thus, should not be considered here.  (Docket No. 69 at 3).  To be clear, on the face of the

---

[17]    The Court notes that like *Sullivan*, the decision in *Cassway* is not controlling and did not apply the precise test set forth by the United States Court of Appeals for the Third Circuit in *Dun & Bradstreet*.  *See* n. 11, *supra*.  However, the analysis set forth by the district court in *Cassway* is persuasive in that the tortious interference claim there was found to not be preempted because that claim relied on a contract that protected rights which were not akin to those protected by the Copyright Act.  *See Cassway*, 1993 WL 646333, at *5.

Second Amdended Complaint, Plaintiff alleges that both Defendants were aware of existing confidentiality agreements with franchisees. (Docket No. 56 at ¶ 167). Plaintiff alleges further that Extensia's conduct in marketing the EMX software and providing access to the TEGG databases as well as Beckstrom's conduct in assisting Extensia "intentionally, knowingly, and without justification or privilege interferes with TEGG's existing contractual relationships with its franchisees." (Docket No. 56 at ¶¶ 171-72). Thus, reading the allegations in the light most favorable to Plaintiff, the allegations on the face of the Second Amended Complaint describe an awareness of confidentiality agreements and knowing and intentional interference with existing contractual relationships. (*Id.*).

The Court agrees with Defendants that the present facts are distinguishable from *Cassway* and, applying the "extra element" test set forth in *Dun & Bradstreet*, finds that the act of marketing with intent to interfere with existing contractual relationships does not constitute an extra element necessary to protect the tortious interference claim from preemption. *Dun & Bradstreet*, 307 F.3d at 217-18. Even if the Court were to determine that Plaintiff's allegations detailed in its response match those in the Second Amended Complaint, Plaintiff still has not distinguished its tortious interference claim as qualitatively different from a copyright claim despite allegations of Defendant Extensia's inducement of franchisees to breach confidentiality obligations. In *Cassway,* the gravamen of plaintiff's tortious interference claim was that the defendant interfered with contracts plaintiff had with two consultants by negotiating directly with them without paying plaintiff the required fee. *Cassway*, 1993 WL 64633, at *5. This failure to pay under the contractual agreement was found to be a wholly distinct element from those necessary to establish a copyright claim. *Id.*

Here, the crux of Plaintiff's tortious interference claim is that Beckstrom and Extensia's conduct led to the improper distribution of Plaintiff's copyrighted databases as well as the production and sale of the allegedly infringing EMX software. In other words, to prevail on its claim of tortious interference, Plaintiff must eventually prove that Extensia induced Plaintiff's franchisees to deliver copies of Plaintiff's copyrighted databases so that Extensia, with Beckstrom's assistance, could produce, market, and sell the infringing EMX software. The right to distribute, reproduce, and produce derivative works based on copyrighted material is clearly governed by the federal Copyright Act. 17 U.S.C. § 106. Upon evaluation of this claim, the court finds that while an alleged breach of confidentiality in these transactions between Extensia and TEGG's franchisees may have occurred, Plaintiff's ultimate claim is based on its right to prevent unlawful interference with its right to distribute and reproduce its copyrighted software and databases to current and future parties, and create for those parties derivative works based on its copyrighted software and databases. Furthermore, stating a claim for tortious interference does not require an allegation of a breach of confidentiality. *MCS Services*, 2002 U.S. Dist. LEXIS 16910, at *22.

In this Court's estimation, allegations that Extensia induced franchisees to provide unauthorized access to Plaintiff's copyrighted material, that Defendants may have marketed the EMX software in full awareness of the existing contractual relationships between Plaintiff and its franchisees, and that Defendants had intent to interfere with their relationships do not avoid preemption under Section 301. The awareness and intent elements of tortious interference merely go to the scope of the right and do not establish "qualitatively different conduct on the part of the

infringing party, nor a fundamental nonequivalence between the state and federal rights implicated."

*Id.* at \*26 (quoting *Harper & Row*, 723 F.2d at 201). The Defendants' acts of marketing do not constitute extra elements required to make Plaintiff's tortious interference claim qualitatively different from a copyright claim because, at its heart, the claim involves the improper distribution of copyrighted materials. *See MCS Services, Inc.*, 2002 U.S. Dist. LEXIS 16910, at \*27. Thus, the Court finds that Plaintiff's tortious interference claim is preempted by the Copyright Act. Accordingly, Defendants' respective Motions to Dismiss Plaintiff's tortious interference claims are **GRANTED**.[18]

### C.  Preemption of Plaintiff's Conversion Claim

As to its conversion claim, Plaintiff alleges the following:

158. TEGG incorporates herein by reference paragraphs 1-157 of this Second Amended Complaint as though set forth in full.[19]

159. Extensia, upon information and belief, converted property of TEGG, including but not limited to the TEGGTask 5 Software Application and/or the TEGGTask 6 Software Application, the TEGGTask 5 Database and/or the TEGGTask 6 Database, and/or the TEGGTask 5 Screen Images and/or the TEGGTask 6 Screen Images, all of which are protected by copyright, for its own use and benefit.

160. The conversion of TEGG's copyrighted property by Extensia will cause substantial competitive disadvantage to TEGG which will be substantially and irreparably harmed.

161. The conversion is wrongful.

---

[18]

Having found that Plaintiff's tortious interference claim is preempted by the Copyright Act, the Court need not address Defendant Beckstrom's alternative argument that said claim must be dismissed for failure to plead all necessary elements. (See Docket No. 61 at 6-7).

[19]

*See* n. 10, *supra*.

162. Extensia has caused TEGG to sustain damages as a result of the conversion, which damages, at this time, are not fully ascertainable, but which are in excess of $75,000 exclusive of interest and cost.

(Docket No. 56 at ¶¶ 158-162).

Defendant Extensia argues that Plaintiff's conversion claim is functionally equivalent to a copyright claim and is therefore preempted by the Copyright Act. (Docket No. 64 at 6). In response, Plaintiff argues that because Defendant Extensia possesses the physical embodiment of its copyrighted materials, Plaintiff's claim for conversion contains an extra element that would make it qualitatively different than a copyright claim. (Docket No. 65 at 7). Under Pennsylvania law,[20] conversion is "an act of willful interference with the dominion and control over a chattel done without lawful justification, by which any person entitled to the chattel is deprived of its use and possession." *Gemel Precision Tool Co., Inc. v. Pharma Tool Corp.*, Civ. A. No. 94-5305, 1995 WL 71243 at *6 (E.D. Pa. 1995)(citing *Baram v. Farugia*, 606 F.2d 42, 43 (3d Cir. 1979)). Here, Plaintiff alleges that Extensia converted Plaintiff's copyrighted software, databases, and screen images for its own use and benefit. (Docket No. 56, ¶ 159). For the following reasons, the Court finds that Plaintiff's conversion claim is preempted, thus, it fails as a matter of law.

District courts within the Third Circuit have found that the Copyright Act preempts state law conversion claims regarding copyrighted property. In *Apparel Bus. Sys., LLC v. Tom James Co.*, 2008 U.S. Dist. LEXIS 26313, at *54 (E.D. Pa. Mar. 28, 2008), the district court determined that because the plaintiff's conversion claim arose from copying and misuse of its work, it was functionally equivalent to a copyright claim. The court also noted that because it is intangible

---

[20]

*See* n. 16, *supra*.

property, software is generally not subject to a conversion claim. *Id.* In *Gemel Precision Tool Co., Inc. v. Pharma Tool Corp.*, Civ. A. No. 94-5305, 1995 WL 71243 (E.D. Pa. Feb. 13, 1995), the district court found that an act of conversion regarding plaintiff's copyrighted blueprints and computer databases to be substantively similar to a copyright claim. Likewise, the district court in *Sullivan*, 1997 WL 778976, at * 5, utilized a very similar analysis holding that plaintiff's conversion claim involving its software, databases, and computer files was functionally equivalent to a copyright claim.

In contrast, district courts within the Third Circuit have found limited situations in which a conversion claim is not preempted by the Copyright Act. *See Peirson v. Clemens, Inc.,* Civ. A. No. 03-1145 JJF, 2005 WL 681309 (D. Del. March 23, 2005) (holding that conversion of the *physical embodiment* of a copyright work was not preempted by the Copyright Act (emphasis added)); *Stenograph, LLC v. Sims,* Civ. A. No. 99-5354, 2000 WL 964748 (E.D. Pa. July 12, 2000) (holding that a conversion claim involving unlawful possession of a software key that must be physically inserted into a stenography machine to use the software is not preempted); *see also Gemel,* 1995 WL 71243 at *6 (explaining in dicta that had the defendants removed non-copyrighted materials from the plaintiff's premises, § 301 would not preempt an action for conversion of those items or information).

Plaintiff claims that Extensia received Plaintiff's tangible property, namely the TEGGTask Software Applications, the TEGG databases, and sample pages of inspection reports showing information that Extensia would need to properly customize the EMX software for a particular customer. (Docket No. 56 at ¶¶ 63-64, 70, 159). According to Plaintiff, because Extensia had

physical possession of Plaintiff's property, Plaintiff's conversion claim contains the requisite extra element to survive preemption. *See Dun & Bradstreet*, 307 F.3d at 217. In support of its argument, Plaintiff relies heavily on the *Peirson* and *Stenograph* decisions. (Docket No. 66 at 7-8).[21]

Plaintiff relies on *Peirson* because it stands for the proposition that a conversion claim involves the possession of the physical embodiment of a particular item that belonged to the plaintiff. However, software has been generally found to be intangible property not physically embodied in a document and, therefore, not subject to a conversion claim. *See Apparel*, 2008 U.S. Dist. LEXIS 26313 at * 54 (citing *Clarity Software, LLC v. Allianz Life Ins. Co. of N. Am.,* Civ. A. No. 04-1441 2006 WL 2346292 at *12 (W.D. Pa. Aug. 11, 2006)). The present case involves conversion of copyrighted software itself, not any physical embodiments of the software belonging to Plaintiff. The Court is persuaded by NIMMER, which instructs that a tangible possession, such as a manuscript, may be subject to conversion; yet an intangible work, such as a poem printed on that manuscript, is subject to copyright infringement. *See* NIMMER, §1.01[B][1][i]. In the present case, the physical embodiment or "manuscript" would be a compact disk or some other sort of data storage device, and the "poem" would be the software stored on such devices. Plaintiff mainly claims conversion of the software itself, not merely a physical embodiment of it.

As to Plaintiff's reliance on *Stenograph*, the facts in the present case are also distinguishable. In that case, the plaintiff claimed conversion of a software key, a tangible object that a user must insert into a computer to use the software. *Stenograph*, 2000 WL 964748 at *3. The software key

---

21

    *Peirson*, a Delaware case, appears to present the minority opinion regarding the preemption of a conversion claim involving computer software.

was not under copyright protection. *Id.* For that reason, the court found that an extra element was present in plaintiff's conversion claim and, therefore, it was not preempted. *Id.* In the present case, there is no physical object required to use the TEGG software. Plaintiff's conversion claim involves mainly intangible software and databases, the only physical objects being sample pages of inspection reports and copies of copyrighted screen shots of other sections of the software applications. (*See* Docket No. 56 at ¶¶ 70, 159).

While the Copyright Act does not necessarily protect possession, "implicit in the ownership conferred by § 106 [of the Copyright Act] is the power to control the use of the copyrighted materials." *Gemel*, 1995 WL 71243 at *6. Plaintiff spends a great deal of effort in its Second Amended Complaint detailing how Extensia created software strikingly similar to its own due to alleged unauthorized access to the TEGG software and databases. (Docket No. 56). Plaintiff asserts that Extensia converted the TEGG software and databases "for its own benefit" and that such conversion will result in a "substantial competitive disadvantage" from which Plaintiff will be "substantially and irreparably harmed." (Docket No. 56 at ¶ 160). In other words, Extensia used the TEGG software and databases to create and sell the EMX software, allegedly causing Plaintiff significant harm.

Plaintiff seeks to protect its copyrighted software and databases, recover for their unauthorized distribution and reproduction, and enforce its right to control the use of such property. As all of these rights are governed under the Copyright Act, 17 U.S.C. § 106, the Court finds that Plaintiff's claim for conversion of its software and databases is functionally equivalent to its exclusive right to copy, distribute, and create derivative works from the copyrighted TEGG software

and databases.  *See Gemel*, 1995 WL 71243 at *6; *see also* NIMMER, §1.01[B][1][i] ("What if, contrary to the usual view of conversion, that tort is regarded as encompassing unauthorized reproductions?  In that event, the rights created under state law are indeed 'equivalent' to copyright, and the state law is preempted.").  The Court also finds the *Apparel, Gemel, Sullivan* decisions persuasive, as well as numerous other district court decisions that find state law conversion claims preempted.[22]  Therefore, Plaintiff's claim alleging conversion of the TEGGTask 5 and TEGGTask 6 Software Applications and the TEGGTask 5 and TEGGTask 6 Databases is preempted.

Next, Plaintiff argues that its claim of conversion as to the sample pages should not be preempted.  Plaintiff avers in its Second Amended Complaint that "Beckstrom also provided Extensia with sample pages taken from customer inspection reports showing the information that the EMX software would need to manage."  (Docket No. 56 at ¶ 70).  Further, "the TEGGTask 5 Software Application and/or TEGGTask 6 Software Application, including the copyrighted TEGGTask 5 database and/or the copyrighted TEGGTask 6 database programmed with confidential and proprietary database schema *was the source of the sample pages* provided by Beckstrom to Extensia." (Docket No. 56 at ¶ 71) (emphasis added).

While these sample pages may at first glance appear closer to a "manuscript" than a "poem,"

---

[22]

Outside of the *Apparel*, *Sullivan*, and *Gemel* decisions, many courts in other circuits have found that a claim of conversion of copyrighted software is preempted.  *See U.S. ex rel Berge v. Bd. of Trustees of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997) (holding that a claim for conversion of unauthorized use of scientific data collected for a dissertation preempted by the Copyright Act); *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995) (holding that a state law claim for conversion of song lyrics is preempted because the core of the claim is the wrongful copying, distribution, and performance of those lyrics); *Meridian Project Sys., Inc. v. Hardin Construction Co., LLC*, Civ. A. No. 04-2728 2006 WL 1062070 (E.D. Cal. Apr. 21, 2006); *Vigilante.com, Inc. v. Argus Test.com*, Civ. A. No. 04-413 2005 WL 2218405 (D. Or. Sept. 6, 2006); *Firyooze v. Earthlink Network*, 153 F.Supp.2d 1115, 1124 (N.D. Cal. 2001); *Patrick v. Francis*, 877 F. Supp. 481, 482, 484 (W.D.N.Y. 1995) (holding a conversion claim preempted because the action actually sought to recover for the unauthorized copying of the work, concepts, and ideas of the research paper).

Plaintiff's conversion claim is preempted. To the extent that Plaintiff avers these sample pages are generated by the copyrighted TEGG Software Applications, they may be considered screen output. Screen output is considered an audio-visual work that falls within the subject matter of copyright. *See Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1244 (3d Cir. 1986) (citing *Williams Electronics, Inc. v. Artic International, Inc.*, 685 F.2d 870, 874 (3d Cir. 1982)). Plaintiff claims copyright protection for the collection of images produced on the screen by its software. (Docket No. 56 at ¶¶ 45-48). To the extent that these copyrights protect the screen captures of the inspection reports generated by the TEGGTask 5 and/or the TEGGTask 6 Software Applications, Plaintiff's claim for conversion of these sample pages of inspection reports involves copyrighted material and is, therefore, preempted by the Copyright Act.

The Court has found that the Plaintiff's claim that Defendant Extensia converted software, databases, screen images, and inspection reports is preempted. Accordingly, Defendant Extensia's Motion to Dismiss Plaintiff's conversion claim is **GRANTED**.

## VI. CONCLUSION

Based on the foregoing, the Court makes the following rulings. Defendant Extensia's Motion to Dismiss Plaintiff's conversion, tortious interference and civil conspiracy claims [63] is **GRANTED** as said claims are preempted by the Copyright Act. Likewise, Plaintiff's civil conspiracy claim against Defendant Beckstrom is also preempted and is **DISMISSED**. Defendant Beckstrom's Motion to Dismiss Plaintiff's tortious interference and civil conspiracy claims [60] is **GRANTED IN PART AND DENIED IN PART**. Defendant Beckstrom's Motion to Dismiss is granted to the extent that Defendant Beckstrom argues that Plaintiff's tortious interference claim is

preempted. Defendant Beckstrom's Motion to Dismiss is denied to the extent that it argues that Plaintiff's civil conspiracy claim should be dismissed for failure to properly plead damages, as moot. As Plaintiff's claims of conversion, tortious interference and civil conspiracy are preempted by the Copyright Act, said claims are hereby dismissed, with prejudice. Plaintiff is not granted leave to amend a second time because the Court finds that Plaintiff cannot amend these claims in such a way to avoid preemption, and therefore such amendment would be futile. *See Shane,* 213 F.3d at 116 (noting that futility is a ground for denying leave to amend a complaint). An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: November 26, 2008

cc/ecf: All counsel of record.